UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAYNIECE LUGO-YOUNG,

        Plaintiff,                         **MEMORANDUM AND ORDER**
                                                            10-CV-3197 (RRM)(LB)
  - against -

COURIER NETWORK, INC.,

        Defendant.
------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff, proceeding *pro se*, brings this action against her former employer, defendant Courier Network, Inc., alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 ("ADEA") and the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA").[1] Plaintiff alleges various acts of discrimination and retaliation arising out of her employment with and eventual termination by defendant. Presently before the Court is defendant's motion to dismiss the Title VII and ADEA claims pursuant to Rules 12(b)(6) and 12(d) of the Federal Rules of Civil Procedure. For the reasons below, defendant's motion is GRANTED and plaintiff's Title VII and ADEA claims are DISMISSED, unless, within 30 days of the date of this Memorandum and Order, plaintiff can demonstrate by sufficient showing, as described herein, grounds for equitable tolling of these claims. Plaintiff's EPA claims are not subject to this motion.

---

[1] Plaintiff's application to proceed *in forma pauperis* was granted by order dated July 23, 2010. (Doc. No. 4)

# BACKGROUND[2]

## I. Alleged Discrimination and Retaliation

Plaintiff, Dayniece Lugo-Young, a 40 year old who self-identifies as a "black" woman, was employed by defendant, Courier Network, Inc., an international courier service, as its bookkeeper from February 19, 2007 until her termination on May 1, 2009. (EEOC Charge (Doc. No. 1) at 8; Pl. Opp'n (Doc. No. 24) at 2.)[3] Plaintiff's submissions chronicle defendant's alleged conduct during and immediately subsequent to her tenure, which she alleges forms the basis for Title VII, ADEA and EPA claims. Plaintiff's chief complaint is that she was discriminatorily underpaid and fired. Plaintiff's initial probationary salary was $35,000, which was $15,000 less than her male predecessor and below the lowest salary advertised for the position, despite her 18 years of experience and degree in accounting. (EEOC Charge at 10; Pl. Opp'n at 8.) Though plaintiff requested and received a raise in August of 2007 to $42,500, she never matched the salary level of her male predecessor, despite repeated requests for further raises throughout 2008 and 2009. (EEOC Charge at 10; Pl. Opp'n at 7-8.) Instead, in August of 2008, she was offered a one-time $1,000 bonus, which she refused. (EEOC Charge at 10.) Defendant generally cited

---

[2] The facts, which are assumed to be true for purposes of this motion, are taken from the complaint and its attached U.S. Equal Employment Opportunity Commission ("EEOC") documents, including a Charge of Discrimination ("EEOC Charge") and Dismissal and Notice of Rights (Doc. No. 1), as well as plaintiff's opposition letter to the Court (Doc. No. 24) and other EEOC documents (Doc. Nos. 17, 22-5, 22-6). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (finding that courts may consider on a motion to dismiss any "written instrument attached to [the complaint] as an exhibit," any "statements or documents incorporated in it by reference" or any document "integral to the complaint" because it "relies heavily upon its terms and effect" (quotation marks omitted)); *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 435-36 (E.D.N.Y. 2010) ("[W]ith respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims."). In addition, the mandate to read a *pro se* plaintiff's papers liberally makes it appropriate for the Court to consider factual allegations contained in plaintiff's opposition papers, to the extent they are consistent with the allegations in her complaint. *Richardson v. Dept. of Corr.*, No. 10 Civ. 6137(SAS), 2011 WL 710617, at *3 n.46 (S.D.N.Y. Feb. 28, 2011) (citing *Burgess v. Goord*, No. 98 Civ. 2077(SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999)); *see Agu v. Rhea*, No. 09-CV-4732 (JS)(AKT), 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010) (turning to facts contained in plaintiff's opposition papers where *pro se* plaintiff's complaint contained few decipherable facts).

[3] Page number references to any document with a docket number are to the page numbers assigned by the Court's electronic case filing system.

poor finances as a justification for refusing to increase plaintiff's salary. (EEOC Charge at 10; Pl. Opp'n at 6-7.)

Plaintiff describes a variety of activity during the relevant period, which she alleges was inconsistent with defendant's professed financial distress and demonstrates defendant's favoritism of male or white employees. For example: (1) two of plaintiff's male co-workers received pay increases in 2008; (2) a white male sales manager received a variety of personal benefits - - a laptop, a company car and reimbursement of certain expenses; and (3) company funds were used to pay for personal expenses of defendant's owner. (EEOC Charge at 8, 10; Pl. Opp'n at 6-7.)

Plaintiff also describes instances that she alleges demonstrate that male or white workers were favored generally by defendant over females or minorities. For example: (1) defendant failed to pay a black female billing manager overtime despite doing so for male employees; (2) defendant failed to provide that same black female manager equal health care benefits as paid to a white male manager; (3) defendant generally paid its male workers more than its female workers; and (4) layoffs in early 2009 resulted in the termination of four minority employees, including the only other women employed by defendant, yet, a few months later, defendant hired a male employee. (EEOC Charge at 8-10; Pl. Opp'n at 6.)

On May 1, 2009, plaintiff was terminated. (EEOC Charge at 8.) Although, defendant informed plaintiff that she was being let go for economic reasons, defendant had hired a male "Operation Agent" eight days prior and hired a white female in her mid-thirties to replace plaintiff shortly after. (EEOC Charge 9-10; Pl. Opp'n at 5.) Plaintiff discovered that she had been replaced on May 16, 2009. (Pl. Opp'n at 5.) Plaintiff alleges that she was terminated because of discrimination based on her gender, race and age, as well as in retaliation for

questioning defendant about the aforementioned allegedly discriminatory conduct. (EEOC Charge at 8.)

## II. EEOC Filings and Procedural History

On or about May 27, 2009, plaintiff sent an intake questionnaire to the EEOC alleging race, sex, national origin, and color discrimination. (EEOC Intake Questionnaire ("EEOC Questionnaire") (Doc. No. 17) at 1; Pl. Opp'n at 4.) Plaintiff checked a box on the questionnaire indicating that she "want[ed] to talk to an EEOC employee before deciding whether to file a charge of discrimination" and that she understood "that by checking this box, [she had] not filed a charge with the EEOC." (EEOC Questionnaire at 8.) A formal EEOC charge was subsequently filed on March 12, 2010. (EEOC Charge at 8.)

On June 29, 2010, the EEOC closed plaintiff's file and issued a right to sue letter, stating that defendant was not covered by Title VII or the ADEA because defendant did not employ the statutory minimum number of employees. (EEOC Dismissal and Notice of Rights (Doc. No. 1) at 6.) On July 13, 2010, the EEOC reopened its investigation with regard only to the EPA claim, but on December 7, 2010, the EEOC issued a dismissal and notice of rights for plaintiff's EPA claim. (Declaration of Jamie S. Felsen (Doc. No. 22), Exs. D-E, dated January 10, 2011.)

On July 12, 2010, plaintiff commenced this action alleging discrimination based on her race and gender in violation of Title VII and discrimination based on her age in violation of the ADEA. (Compl. 10-CV-3197 (Doc. No. 1).) On February 17, 2011, plaintiff commenced a related action alleging unequal pay in violation of the EPA. (Compl. 11-CV-859 (Doc. No. 1).) By Order on March 16, 2011, the Court consolidated the two cases and deemed the complaint in 10-CV-3197 to be amended to include the EPA claim raised in 11-CV-859. (Order, March 16, 2011.) On April 4, 2011, defendant filed a fully briefed motion seeking dismissal, pursuant to

4

Federal Rules of Civil Procedure 12(b)(6) and 12(d), of plaintiff's claims under Title VII and the ADEA. (Doc. Nos. 18-27.)[4]  The EPA claim is not subject to the present motion and is currently in discovery.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). A complaint need not contain " 'detailed factual allegations,' " but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

---

[4] On April 7, 2011, plaintiff filed an unauthorized sur-reply that the defendant has urged the Court to disregard. (Doc. Nos. 28, 30.) The Court has fully considered plaintiff's unauthorized sur-reply and found it had no effect on the outcome of this motion.

1949 (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).

In *Swierkiewicz v. Sorema N.A.*, the Supreme Court rejected the notion that there is a heightened pleading standard in discrimination cases, holding that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under the standard set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). 534 U.S. 506, 510 (2002) ("The *prima facie* case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."); *see also Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71-72 (2d Cir. 2006) (applying *Swierkiewicz* to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* to discrimination claims under Title VII). Moreover, the Second Circuit has held that the framework articulated in *Swierkiewicz* for analyzing whether a plausible claim for discrimination has been pleaded remains viable in the wake of *Twombly* and *Iqbal*. *See, e.g.*, *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) ("[A]lthough *Twombly* and *Iqbal* require factual amplification [where] needed to render a claim plausible, we reject [appellant's] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible." (internal quotations and citations omitted)); *Boykin v. Key Corp.*, 521 F.3d 202, 213 (2d Cir. 2008) (noting that *Twombly* "affirmed the vitality of *Swierkiewicz*, which applied a notice pleading standard, and explained that its decision did not 'require heightened fact pleading of specifics' "); *Gillman v. Inner City Broad. Corp.*, No. 08-CV-8909(LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) ("*Iqbal* was not meant to displace *Swierkiewicz's* teachings

6

about pleading standards for employment discrimination claims because in *Twombly*, which heavily informed *Iqbal*, the Supreme Court explicitly affirmed the vitality of *Swierkiewicz*." ); *accord E.E.O.C. v. Propak Logistics, Inc.*, No. 09-CV-311, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010) ("[E]ven after *Twombly*, an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements." (citing *Boykin*, 521 F.3d at 212-15)).

While *pro se* plaintiffs must satisfy these pleading requirements, federal courts are "obligated to construe a *pro se* complaint liberally." *See Harris*, 572 F.3d at 71-72 (citations omitted). In other words, trial courts hold *pro se* complaints to a less exacting standard than they apply to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Boykin*, 521 F.3d at 213-14 (citation omitted). Since *pro se* litigants "are entitled to a liberal construction of their pleadings, [their complaints] should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). When a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, however, the court should not hesitate to dismiss his complaint. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted); *see also Johnson v. City of N.Y.*, 669 F. Supp. 2d 444, 448, (S.D.N.Y. 2009) ("[T]o survive a motion to dismiss, even a *pro se* plaintiff must plead enough facts to state a claim to relief that is plausible on its face." (citation and internal quotation marks omitted)).

## DISCUSSION

Defendant seeks to dismiss the complaint on two grounds: (1) that plaintiff's claims are barred because she did not timely file them with the EEOC; and (2) that defendant does not

7

employ the minimum number of employees required to be covered by the ADEA or Title VII. Each will be addressed in turn.

I.      **Prerequisites to Filing Title VII and ADEA Claims in Federal Court**

A plaintiff must timely file an EEOC charge as a prerequisite to filing Title VII or ADEA claims in federal court. *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII); *Francis v. City of N.Y.*, 235 F.3d 763, 767-68 (2d Cir. 2000) (stating that filing a timely charge with the EEOC is "an essential element" of Title VII's statutory scheme and a prerequisite to filing a claim in federal court); 29 U.S.C. § 626(d)(1) (ADEA); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562 (2d Cir. 2006) (finding an EEOC charge is a prerequisite to filing an ADEA suit in federal court).

For plaintiff's claims to be timely, she must have filed a charge with the EEOC within three hundred days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1) (Title VII); *Baroor v. N.Y.C. Dep't of Educ.*, 362 Fed. App'x 157, 159 (2d Cir. 2010); 29 U.S.C. §§ 626(d)(1)(B), 633(b) (ADEA); *Holowecki*, 440 F.3d at 562 & n.1. Failure to file a timely charge acts as a bar to a plaintiff's ability to bring the action. *Baroor*, 362 Fed. App'x at 159-60 (finding Title VII claims "time-barred" where EEOC charge was outside 300 day period); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 112-113 (2d Cir. 2008) (finding ADEA claim "barred" where EEOC charge was filed outside 300 day period).[5]

The 300-day period begins to run when a prospective plaintiff "knew or should have known of the adverse treatment upon which he or she will ultimately sue." *McMillian v. N.Y.C. Dep't of Corr.*, 152 F.3d 919 (Table), No. 97-9261, 1998 WL 385986, at *1 (2d Cir. May 29,

---

[5] Courts strictly adhere to the 300-day filing period. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002); *see, e.g., Miller v. Int'l Tel. and Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) (stating ADEA claim would be untimely if filed 1 day outside 300-day period); *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 577 (E.D.N.Y. 2011) (dismissing Title VII claim where EEOC charge was filed 6 days outside the 300-day filing period); *Van Zant v. KLM Royal Dutch Airlines*, 870 F. Supp. 572, 575 (S.D.N.Y. 1994) (rejecting Title VII claim filed approximately two weeks outside the 300-day filing period).

8

1998) (citing *Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992)). The court's inquiry does not focus on "the point at which the *consequences* of the act become painful;" rather, "[t]he timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision." *Morse*, 973 F.2d at 125 (emphasis in original) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)). However, the timely charge requirement is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (Title VII); *Holowecki*, 440 F.3d at 563 ("ADEA's time limit requirements are subject to equitable modification or estoppel . . . .").

Therefore, the Court must determine: (1) when plaintiff's claims accrued; (2) whether she filed an EEOC "charge" for the purposes of Title VII or the ADEA within 300 days of the accrual; and (3) whether equitable tolling is appropriate if plaintiff's claims would otherwise be untimely.

    a. **Accrual of Plaintiff's Claims**

The law of accrual is "concerned with a plaintiff's knowing that he has suffered an injury, not with any other facts that might support his cause of action." *See Heins v. Potter*, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003) (Title VII). That is, "an employee has notice of his injury on the date that the employer has clearly communicated to the employee its decision to terminate him. It is not a prerequisite to accrual that an employee have 'information necessary to decide whether the injury is due to . . . wrongdoing by the defendant.' " *See Wall v. Nat'l Broad. Co., Inc.*, 768 F. Supp. 470, 474 (S.D.N.Y. 1991) (ADEA) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). Plaintiff received notice of her termination on May 1, 2009. (EEOC Charge at 10.) The fact that plaintiff was unaware of the alleged discriminatory animus

motivating her firing until she discovered that she had been replaced on May 16, 2009, is irrelevant to determining her accrual date. (Pl. Opp'n at 5.); *see Morris v. Broadridge Fin. Servs., Inc.*, No. 10-CV-1707 (JS)(AKT), 2010 WL 5187669, at *3 (E.D.N.Y. Dec. 14, 2010) (finding Title VII claim accrued "at the time of Plaintiff's injury, regardless of whether Plaintiff was aware of Defendants' allegedly discriminatory motives"); *Carrion v. Coca-Cola Bottling Co.*, No. 3:05-cv-1720 (JCH), 2006 WL 3526748, at * 3-4 (D. Conn. Dec. 1, 2006) (finding that a Title VII claim accrues "on the date [plaintiff] was terminated" because such a claim accrues " 'upon awareness of actual injury, not upon awareness that [the] injury constitutes a legal wrong' " (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d. Cir. 1994))); *Heins*, 271 F. Supp. 2d at 54 (explaining that "[i]n a discriminatory discharge case . . . a plaintiff's firing is the injury that he suffered as well as the adverse employment action that forms the basis of his cause of action").

Therefore, in order to be timely, plaintiff must have filed her charge by February 25, 2010, which is 300 days after May 1, 2009.

### b. EEOC Charge Date

Plaintiff's EEOC Charge was received by the EEOC on March 12, 2010, 315 days after May 1, 2009. (EEOC Charge at 8.) Nevertheless, plaintiff urges the Court to deem her EEOC Charge to have been timely filed on June 1, 2009 when the EEOC received the initial "Intake Questionnaire" she sent on May 27, 2009. (Pl. Opp'n at 4; EEOC Questionnaire at 1.)

An intake questionnaire can constitute a charge when, *inter alia*, it is "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (interpreting "charge" under the ADEA); *Price v. City of*

10

*N.Y.*, 797 F. Supp. 2d 219, 225-26 (E.D.N.Y. 2011) (collecting cases applying *Holowecki* to Title VII); *Broich v. Inc. Vill. of Southampton*, No. CV-08-0553 (SFJ)(ARL), 2011 WL 284484, *6-7 (E.D.N.Y. Jan 25, 2011) (applying *Holowecki* to Title VII), *aff'd in relevant part*, No. 11-467, 2012 WL 470422 (2d Cir. Feb. 15, 2012).

      In *Holowecki*, the Court noted that the "design of the form in use in 2001 . . . does not give rise to the inference that the employee requests action" and urged the EEOC to "establish[] a clearer, more consistent process." *Holowecki*, 552 U.S. at 405, 407. Since that time the EEOC has changed the form to require a claimant to clearly express his or her intent by checking one of two boxes, thereby "forc[ing] claimants to decide whether their questionnaire is a request for the agency to take remedial action, such that courts can objectively determine whether each questionnaire is a charge of discrimination or merely a request for further information." *Hawthorne v. Vatterott Educ. Ctrs., Inc.*, No. 09-CV-442-TCK-PJC, 2010 WL 3258560, at *4 (N.D. Okla. Aug. 17, 2010); *Brahmana v. Lembo*, No. C-09-00106 (RMW), 2010 WL 965296, at *1 (N.D. Cal. Mar. 17, 2010).

      In *Holowecki*, the Court emphasized the importance of the EEOC fulfilling its "statutory function[]" of "disseminating information" about the discrimination laws by allowing "individuals who have questions about their rights and simply want information" to consult the EEOC informally without unintentionally triggering the employer notification that follows a formal charge. *Holowecki*, 552 U.S. at 400-401. Were this Court to interpret a questionnaire where the claimant indicated she *does not* wish to file a charge to in fact be a charge, the "questionnaire itself would be misleading" and there would be substantial uncertainty both for the EEOC and claimant. *Hawthorne*, 2010 WL 3258560, at *4. Injecting such uncertainty into the process could, "contrary to Congress' expressed desire," discourage potential claimants from

11

reaching out to the EEOC until it was too late to resolve a claim informally. *Holowecki*, 552 U.S. at 401.[6]

Here, rather than checking the first box on her questionnaire, indicating she "want[ed] to file a charge," plaintiff checked the second box, indicating she "want[ed] to talk to an EEOC employee before deciding whether to file a charge of discrimination," and that she understood "that by checking this box, [she had] not filed a charge with the EEOC." (EEOC Questionnaire at 8.)[7] Based on this plain language, plaintiff's June 1, 2009 questionnaire cannot be construed as a timely EEOC Charge. As such, because plaintiff did not file her EEOC Charge until March 12, 2010, the events complained of, including her termination on May 1, 2009, occurred outside the requisite 300-day window, thereby rendering untimely plaintiff's claims under Title VII and the ADEA.

---

[6] In *Holowecki*, the Court also suggested that in some instances "the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required." *Holowecki*, 552 U.S. at 405. Here, rather than "clear or pervasive," the allegations are inferential and based on disparate treatment. Given such allegations and plaintiff's evinced intent not to file a charge, the Court declines to find that the EEOC should have inferred that action was requested and required.

[7] The Form plaintiff completed reads as follows:
>Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so within either 180 or 300 days from the day you knew about the discrimination . . . . *If you do not file a charge of discrimination within the time limits, you will lose your rights. If you want to file a charge, you should check Box 1, below. If you would like more information before deciding whether to file a charge or you are worried or have concerns about EEOC's notifying the employer, union, or employment agency about your filing a charge, you may wish to check Box 2, below.*
>
>Box 1
>I want to file a charge of discrimination and I authorize the EEOC to look into the discrimination I described above. I understand that *the EEOC must give the employer . . . that I accuse of discrimination information about the charge, including my name* . . . .
>
>Box 2
>I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

(EEOC Questionnaire at 8 (emphasis in original).)

### c. Equitable Tolling

Equitable tolling may be appropriate where "the employee was actively misled by his employer" or "was prevented in some extraordinary way from exercising his rights." *Miller*, 755 F.2d at 24. Equitable tolling is "rare and exceptional." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (quotation marks omitted).

Plaintiff presents two reasons for tolling her claims. First, plaintiff alleges that defendant intentionally misled her by informing her that her "position was being eliminated" when, in fact, defendant hired a new bookkeeper shortly after plaintiff's termination. (EEOC Charge at 10.) Plaintiff alleges that she was thereby prevented from knowing defendant's discriminatory intent until she discovered that she had been replaced on May 16, 2009. (*Id.*; Pl. Opp'n at 5.)

An "employee's awareness of a discriminatory motive has no bearing on the 300-day period." *See Syrkin v. State Univ. of N.Y.*, No. 04-CV-4336 (FB)(RML), 2005 WL 2387819, at *8-9 (E.D.N.Y. Sept. 29, 2005) (rejecting the notion that a pretextual termination justification gives rise to equitable tolling); *see also Talyansky v. Mercury Print Prod., Inc.*, 189 F.3d 462 (Table), No. 98-9438, 1999 WL 642922, at *2 (2d Cir. Aug. 20, 1999) (rejecting tolling based on alleged pretextual justification of downsizing); *Carrion*, 2006 WL 3526748 at *4 (rejecting tolling based on alleged pretextual justification of theft); *Wall*, 768 F. Supp. at 475 (rejecting tolling of an ADEA claim based on alleged pretextual justification of "downsizing"). Simply put, "plaintiff's lack of awareness of defendants' intent does not toll the filing period, and the fact that defendants may have provided other reasons for the employment actions does not justify an inference that plaintiff was misled." *Gray v. Shearson Lehman Bros., Inc.*, 947 F. Supp. 132, 135 (S.D.N.Y. 1996). Even accepting that the "downsizing" justification was wholly pretextual, such conduct does not support equitable tolling.

Second, plaintiff alleges that any delay before the filing of a formal charge was caused by the EEOC. (Pl. Opp'n at 4.) Plaintiff alleges that the EEOC received her questionnaire on June 1, 2009, and that she had a number of conversations with EEOC investigators that eventually resulted in the March 12, 2010 charge. (Pl. Opp'n at 4 (alleging that the EEOC is "inundated with cases just like mine and they are short handed . . . so it is going to take some time."))[8]

It is true that the EEOC's conduct can, in some circumstances, justify equitable tolling. *See Sinha v. N.Y.C. Dep't of Educ.*, 127 Fed. App'x 546, 547 (2d Cir. 2005) (reviewing possibility of tolling if EEOC investigator misled plaintiff about operation of 300-day filing period); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (same); *Jacobs v. SUNY at Buffalo Sch. of Med.*, 204 F. Supp. 2d 586, 592-93 (W.D.N.Y. 2002) (finding tolling appropriate where plaintiff contacted EEOC within the 300 day period, continued to make inquiries and EEOC allegedly admitted dereliction); *Bartniak v. Cushman & Wakefield, Inc.*, No. 99 CIV 11916(RLE), 2001 WL 1505501, at *5 (S.D.N.Y. Nov. 27, 2001) (where plaintiff "was led by the agencies to believe that she had done everything required of her to file a complaint" equitable tolling was appropriate); *O'Connor v. Pan Am*, No. 88 Civ. 5962 (KTD), 1990 WL 118286, at *2-3 (S.D.N.Y. May 4, 1990) ("Equitable modification is appropriate when the EEOC misleads a complainant about the nature of his or her rights under Title VII or the ADEA."). However, plaintiff has offered little support for the conclusion that she was "prevented in some extraordinary way from exercising [her] rights." *Miller*, 755 F.2d at 24. While plaintiff suggests that the EEOC reacted slowly to her claim, she in no way alleges that the EEOC was responsible for plaintiff missing the deadline. Plaintiff has failed to set forth anything about her conversations with EEOC personnel, and as discussed above, her EEOC questionnaire when

---

[8] Additionally, plaintiff's EEOC Questionnaire includes a series of handwritten notes recording conversations between plaintiff and EEOC personnel throughout the summer of 2009. While the content of those conversations is unclear, it would appear they are related to her questionnaire. (EEOC Questionnaire at 3-4.)

14

filed indicated that she was not filing a charge at that time. As such, plaintiff has not established sufficient grounds for equitable tolling on the allegations presently before the Court.

However, considering plaintiff's *pro se* status, the Court will allow plaintiff to demonstrate, if she can, that there exists sufficient facts on which this Court may equitably toll the time to exhaust her administrative remedies with regard to her Title VII and ADEA claims. Plaintiff shall so do by submitting within 30 days of the date of this Memorandum and Order supporting affidavits and/or other materials, together with a memorandum of law supporting her tolling claim. Should plaintiff fail to make a timely and sufficient showing, her Title VII and ADEA claims will be dismissed.

## II. Whether Defendant is an "Employer" under Title VII and the ADEA

Defendant also argues that it is not an "employer" under Title VII or the ADEA because it does not have enough employees. (Def. Mem. (Doc. No. 19) at 7-8.) Because the Court finds that plaintiff's claims must be dismissed for failure to timely file with the EEOC, as discussed *supra*, the Court declines to reach this issue.[9]

## CONCLUSION

For the above reasons, defendants' motion to dismiss is GRANTED. Plaintiff's Title VII and ADEA claims are DISMISSED, unless, within 30 days of the date of this Memorandum and Order, plaintiff can demonstrate by sufficient showing that there exist sufficient facts on which this Court may equitably toll the time to exhaust her administrative remedies with regard to these

---

[9] Moreover, defendant appears to concede that the Court would have to convert this aspect of the motion to a motion for summary judgment in order to decide it. (Def. Mem. at 8 n.4 (requesting conversion).) Given plaintiff's *pro se* status and the fact-intensive nature of this issue, the Court, as it warned at the March 16, 2011 status conference, refuses to convert this prong of defendant's motion into one for summary judgment. *See Baptiste v. Warden at Ottisville, FCI N.Y.*, No. 09 Civ. 5523(AKH), 2010 WL 3185748, at *3 (S.D.N.Y. Aug. 11, 2010) ("In light of [plaintiff's] *pro se* and *in forma pauperis* status and the lack of any discovery, I decline to convert [defendant's] motion to one for summary judgment."); *Meadows v. Planet Aid, Inc.*, 676 F. Supp. 2d 83, 93 (E.D.N.Y. 2009) ("[S]ince Plaintiff is pro se and has not yet had an opportunity to conduct any discovery, it would not be appropriate to put Plaintiff to [her] proof at this juncture.")

claims.  Should she wish to so do, Plaintiff shall submit supporting affidavits and/or other materials within 30 days of the date of this Memorandum and Order, together with a memorandum of law supporting her claim.  Failure to comply with this Order will result in dismissal of plaintiff's claims under Title VII and the ADEA.  As plaintiff's EPA claims are not subject to this motion, this action is recommitted to the assigned Magistrate Judge for supervision of all pre-trial matters.

      The Clerk of Court is directed to send to plaintiff by overnight mail a copy of this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York
       March 13, 2012

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge